**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles HOLCOMB and Ed Wallach,
Defendants-Appellants.**

**No. 85–2669.**

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1986.

Dick DeGuerin, Houston, Tex., for Charles Holcomb.

Scott Ramsey, Harry Nelson Monck, Houston, Tex., for Ed Wallach.

Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GEE, RANDALL, and DAVIS, Circuit Judges.

GEE, Circuit Judge:

Today we consider the appeals of two men found guilty of violating the Travel Act, 18 U.S.C. § 1952, and the Mann Act, 18 U.S.C. § 2422, by participating in an interstate prostitution ring. Their appeals require us to make several rulings. First, the defenses presented at trial were not antagonistic enough to mandate severance. Second, the Mann Act counts of the indictment were insufficient because they mention nothing about an essential element of that statute: the use of a common carrier to cross state lines. We therefore reverse

the convictions under these counts. Finally, although appellant Wallach's guilt is clear, insufficient evidence supports Holcomb's convictions on the other counts. Judgment against him is accordingly reversed.

During 1982 and 1983, Penelope Hatteras operated several businesses in Houston, Texas, Dallas, Texas, Atlanta, Georgia, and Denver, Colorado. Although the advertised purpose of these businesses was to provide "nude modeling and escort services," they were really fronts for an interstate prostitution ring: telephone receptionists would receive calls from customers and dispatch "models" to handle the requests. Payment for the models' services could be by either cash or credit card. Appellant Charles Holcomb was the Houston operation's accountant, and Ed Wallach was a "go-fer"—or general flunky—for Hatteras.

Unfortunately for these entrepreneurs, the federal government discovered what was occurring. Hatteras, Holcomb, Wallach, and Eleanor Murphy[1] were arrested in 1983, and later indicted on 21 counts. The indictment can be summarized as follows:

1. Count One charges conspiracy (18 U.S.C. § 371) to violate the Travel Act, 18 U.S.C. § 1952,[2] and the Mann Act, 18 U.S.C. § 2422.[3]

2. Counts Two, Four, Six, Eight, Ten, Twelve, and Fourteen charge specific violations of the Travel Act by causing women to travel in interstate commerce and to then engage in prostitution.

3. Counts Three, Five, Seven, Nine, Eleven, Thirteen, and Fifteen charge specific violations of the Mann Act by inducing the same women to travel in interstate commerce, with the intent that these women engage in prostitution.[4]

4. Counts Sixteen, Seventeen, Eighteen, Nineteen, Twenty, and Twenty-one charge violations of the Travel Act by the alleged use of interstate telephone calls between offices of Hatteras's business in Atlanta, Georgia and Houston, Texas.

Tried together, Hatteras and Wallach were convicted on all counts, while Holcomb was convicted on all but Counts Four, Five, Six, Seven, Fourteen, and Fifteen. The trial court probated the sentences, with both Holcomb and Wallach receiving three years probation for each count, their sentences to run concurrently. All three appealed, but Hatteras has since abandoned her appeal.

1. Murphy died before the beginning of trial.

2. This statute provides in part:
(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to ...
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,-000 or imprisoned for not more than five years, or both.
(b) As used in this section "unlawful activity" means (1) ... prostitution offenses in violation of the laws of the state in which they are committed or of the United States....

3. This statute provides the following:
Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers, in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

4. Count Two corresponds with Count Three as both stem from the same facts. Similarly, Counts Four and Five correspond, as do Counts Six and Seven, Counts Eight and Nine, Counts Ten and Eleven, Counts Twelve and Thirteen, and Counts Fourteen and Fifteen.

Both Holcomb and Wallach contend that they were entitled to severance under Fed.R.Crim.P. 14 because each presented to the jury defenses antagonistic to the other. The general rule, however, is that those indicted together are to be tried together. *United States v. Stotts*, 792 F.2d 1318, 1321 (5th Cir.1986). Fed.R. Crim.P. 14 allows severance, but the decision to sever lies within the trial court's discretion; we may review only for an abuse of that discretion. *Id.* Where allegedly antagonistic defenses are concerned, severance is required only when the defense of one party, if believed, necessarily indicates the guilt of the other. *Id.* In other words, the defenses must be "more than merely antagonistic—they must be antagonistic to the point of being mutually exclusive." *Id., quoting United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir. 1981). The prototypical example is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed the crime.

Antagonistic defenses, however, do not result solely when each defendant points the finger at the other; "[s]everance may be required if only one defendant accuses the other, and the other denies involvement." *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984). Nor need the accusation be explicit. In *United States v. Johnson*, 478 F.2d 1129 (5th Cir. 1973), defendant Smith argued that he was a government informer whose only purpose in helping commit the crime was to aid the police; defendant Johnson, on the other hand, contended that he simply had nothing to do with the crime. We determined that Johnson was entitled to a new trial; although Smith never explicitly accused Johnson, in order to accept his defense, the jury would necessarily have had to disbelieve Johnson's. Appellants rely on *Johnson* in arguing that an abuse of discretion occurred; we must therefore analyze the defenses presented at trial to discern the degree to which they can be said to conflict.

Hatteras and Wallach each contended that he lacked the *mens rea* necessary to violate any criminal law. This argument arises from the manner in which Hatteras ran her businesses. Ostensibly, the models were independent contractors who relied on Hatteras's businesses to establish contact with customers. In other words, by receiving phone calls from those desiring the "models'" services and by then notifying the models of the requests, her businesses served as brokers only: a conduit between buyer and seller. For providing such assistance, Hatteras would receive an "agency fee," skimmed off the top of the model's proceeds. She maintained that her agency was to provide only nude modeling and massage services; her telephone receptionists were instructed to refuse to assist callers explicitly requesting sexual favors. Her models, moreover, testified that Hatteras never talked to them in terms of outright prostitution. Should a model wish to discuss specifics over the telephone, Hatteras demanded complete silence on the topic of sex. In this way, she could and did argue that her part of the operation did not involve prostitution; she collected her fees for providing nude modeling and massages only, which are legal. She might send models to various addresses, but what those women did once there was allegedly beyond her control. Wallach also adopted this defense, but the jury gave it no credence.

One could easily be skeptical of their disclaimer of intent. When Hatteras told him in their first meeting that she ran only a nude modeling and massage service, for example, Holcomb immediately suspected that a prostitution operation was actually involved. Testifying, he mentioned that common sense readily allowed one to discern what was going on, despite Hatteras's asserted business objective of providing only modeling and massages. His trial defense was instead the "piano player" defense: like the piano player in a cathouse (who furnishes only music), he suspected that naughty activities were occurring but contributed no more than accounting services to Hatteras. More specifically, he

contended that, as a mere accountant providing legitimate bookkeeping services, he was unaware of any models' interstate travels. Because of this ignorance, he argued, he cannot be found guilty of conspiracy or of substantive violations of the Mann Act or the Travel Act.

■ Because Hatteras has dropped her appeal, we need not consider how she might have been harmed by Holcomb's testimony; rather, we look to any possible prejudice either Holcomb or Wallach suffered from the defense of the other. When we do, it is immediately apparent that Holcomb cannot maintain that Wallach's defense was antagonistic to his. Wallach's defense of professed ignorance of any activity other than modeling and massaging does nothing to undermine Holcomb's asserted ignorance of interstate travel, especially considering that Holcomb himself suspected prostitution. Had the jury accepted the defense of Hatteras and Wallach—that prostitution was beyond their knowledge or control—then it seems likely that all three defendants would have been found innocent. On the other hand, even though the jury disbelieved this defense, it had to consider Holcomb's on its own merits, because his contentions are unaffected by the state of mind of Hatteras and Wallach. In *Johnson,* we stated that Smith's conviction was not reversible because not influenced by Johnson's defense. 478 F.2d at 1132. Smith's defense prejudiced Johnson's, not the other way round. We think that Holcomb stands in a position similar to Smith's position in *Johnson.* The antagonistic defenses argument is therefore unavailing for him.

■ Wallach stands on firmer footing in making this argument. Holcomb's testimony that he immediately suspected prostitution when told of the operation's basic structure can be viewed as antagonistic to the defense of Hatteras and Wallach. Holcomb's words challenge the credibility of a defense based on alleged inability to control the models; if it is so easy to realize how prostitution can result from the legitimate services provided, as Holcomb said it

is, then one may reasonably conclude that the business's operators in fact intended this result. We nevertheless hold that severance is not required because of this. While Holcomb's words can be seen as undermining Wallach's defense, they did not form the core of Holcomb's defense. He did not base his argument on his immediate suspicion of prostitution; rather, the gist of his defense was his own alleged ignorance of the operation's *interstate* nature. This claim of ignorance does not really challenge anything advanced by either Holcomb or Wallach. Because the crux of Holcomb's defense is not antagonistic to Wallach's, Wallach did not suffer such compelling prejudice as would require severance. *United States v. Sheikh,* 654 F.2d 1057, 1065 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

■ Holcomb advances a second reason why severance should have been required: because Hatteras enjoyed the right to refuse to testify, joint trial deprived him a valuable witness. Severance for this reason is required only if a defendant first establishes "a bona fide need for the testimony, the substance of the desired testimony, the exculpatory effect of the desired testimony, and that the co-defendant would indeed have testified at trial." *Johnson,* 713 F.2d at 640, *quoting United States v. Marable,* 574 F.2d 224, 231 (5th Cir.1978). We are able to form some idea of the testimony Holcomb wished to elicit from Hatteras both from an affidavit of hers and from a transcript of an unrelated civil proceeding involving Holcomb and her. In each, Hatteras asserts: that Holcomb was hired to provide only legitimate accounting services, that he had no ownership or managerial position in her business, and that he was told only of a legal business venture. We agree with Holcomb that such evidence is exculpatory. The Government does not dispute this, responding instead that any testimony of Hatteras would have been only cumulative. We agree. The jury already knew that Holcomb provided bookkeeping services and owned no part of the

business. Any further testimony that Holcomb was told of only a legitimate operation seems unimportant, considering that he himself testified about his suspicions of prostitution. We therefore conclude that no abuse of discretion occurred when the judge refused to grant severance.

■ The appellants next challenge the sufficiency of the indictment. The Mann Act forbids inducing a woman to travel in interstate commerce and "thereby knowingly cause such woman or girl to go and to be carried *upon the line or route of any common carrier....*" 18 U.S.C. § 2422 (emphasis added). The indictment's Mann Act counts mention nothing about an interstate carrier, stating only that the models traveled in interstate commerce.[5] The appellants insist that this failure renders the Mann Act counts insufficient.

Two old Mann Act cases are on point. In *Hughes v. United States*, 114 F.2d 285 (6th Cir.1940), the indictment mentioned that a common carrier was used, but failed to specify its identity or route. The court nevertheless affirmed the conviction because "[t]here is nothing in this case to indicate surprise or that the accused was not fully apprised of the charges against him." *Id.* at 288. It then expounded the

analysis proper to judge the indictment's sufficiency; "[t]he true test of the sufficiency of the indictment is whether it contains the elements of the offense intended to be charged, and sufficiently apprises the accused of what he must be prepared to meet, so that judgment may be a bar to further proceedings against him for the same offense." *Id.* Similar reasoning appears in *Lee v. United States*, 125 F.2d 95 (9th Cir.1942), a case in which the indictment stated the name of the airline used but failed to note its status as a common carrier. In affirming the conviction, the court stated that "[t]he indictment informs appellant what was intended to have been charged and what he must be prepared to meet." *Id.* at 96.

Any failings of the indictments in *Hughes* and *Lee* are minor compared to the omission involved here. No mention whatever of a common carrier is made in the indictment of appellants; rather, it declares only that transportation in interstate commerce occurred. Use of a common carrier is an essential element of the crime defined by 18 U.S.C. § 2422. Its absence would, for all intents and purposes, dissolve any difference between § 2422 and its companion provision, 18 U.S.C. § 2421.[6] Looking, then, beyond the better-case reasoning of

---

**5.** An example of the indictment's Mann Act counts is Count Five, which provides the following:

In or about November 1983, in the Houston Division of the Southern District of Texas, and within the jurisdiction of this Court, PENELOPE HATTERAS, ELEANOR MURPHY, ED WALLACH, and CHARLES HOLCOMB, Defendants herein, each being aided and abetted by the other and by persons known and unknown to the Grand Jury, with intent that "Kim" DOE, a female whose true name is known to the Grand Jury, engage in the practice of prostitution, did knowingly and unlawfully induce, entice, persuade and thereby cause "Kim" DOE to travel in interstate commerce from Houston, Texas to Denver, Colorado for the purpose of prostitution.

(Violation: Title 18, United States Code, §§ 2422 and 2.)

**6.** This statute provides the following:

Whoever knowingly transports in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, or for any

other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or

Whoever knowingly procures or obtains any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States, in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*Hughes* and *Lee*, we review more general law on the sufficiency of an indictment.

*United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986), contains an analysis similar to that of *Hughes:* "[a]n indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense." A general method of testing an indictment is to determine whether it tracks the applicable statute's clearly delineated elements. *Id.* at 1169–70 (citations omitted). The Mann Act counts in today's case fail this standard. Lacking reference to any use of a common carrier, they fail to recite the Mann Act's essential elements. They are therefore insufficient, and accordingly, we must reverse the convictions on these counts.

■■■ Finally, Holcomb and Wallach challenge the sufficiency of the evidence. Because the cases against the two differ significantly, we consider each appellant separately, beginning with Holcomb. Count One charged that Holcomb conspired to violate the Mann Act and the Travel Act; it is therefore necessary to review general law on conspiracy in brief. The essential elements of conspiracy are an agreement between two or more people to commit a crime and an overt act done in furtherance of the agreement. *United States v. Teal*, 582 F.2d 343, 345 (5th Cir.1978) (citations omitted). The agreement must be knowingly arrived at. *United States v. Ballard*, 663 F.2d 534, 543 (5th Cir.1981). Mere association with those involved in a criminal venture is insufficient to prove participation in a conspiracy. *United States v. Alvarez*, 610 F.2d 1250, 1255 (5th Cir.1980), *aff'd* 625 F.2d 1196 (5th Cir.1980) (en banc),

*cert. denied*, 451 U.S. 938,. 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). Because it is difficult to present direct evidence of an agreement, however, its existence may be implied by circumstantial evidence. *E.g., United States v. Crockett*, 534 F.2d 589, 594 (5th Cir.1976). To establish one's guilt as a conspirator, therefore, the Government need only present some evidence suggesting his knowing agreement to violate federal law. *Ballard*, 663 F.2d at 543, *citing United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir.1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

■■ What is crucial to understand in this case is that Holcomb is not charged with conspiring to further prostitution; there is no federal law making prostitution illegal. Instead, he is charged with conspiring to violate the Mann Act and the Travel Act. The Government, therefore, cannot establish his guilt by simply showing his awareness of prostitution. It must also produce some evidence suggesting that Holcomb knowingly agreed with Hatteras that her operation would entice women to cross state lines for the purpose of prostitution.[7]

Here, the Government has apparently lost sight of this requirement. At trial, it devoted much effort to showing what Holcomb did for Hatteras, how he set up her books and distributed pay to the models— all the while suspecting that Hatteras was operating a prostitution ring. We see nothing, however, suggesting the particular knowledge that women were coming in from other states. On appeal, the Government does little to aid our search, pointing to only two pieces of information. First, Holcomb knew Hatteras operated businesses in several states; he testified that he flew twice to Atlanta, Georgia, to set up

7. The language of the Travel Act might be thought to suggest that guilt must be based on one's *own* crossing of state lines to carry on illegal activity. In *Rewis v. United States*, 401 U.S. 808, 813, 91 S.Ct. 1056, 1060, 28 L.Ed.2d 493 (1971), however, the Supreme Court recognized a broadened scope of this statute; "there are cases in which the federal courts have cor-

rectly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity...." (citations omitted); *See also United States v. Baker*, 611 F.2d 961 (4th Cir.1979) (defendants guilty of violating § 1952 for arranging for prostitutes to cross state lines).

bookkeeping for her operation there. This knowledge, however, does not translate into an awareness that the models were crossing state lines. For all we know, the Atlanta operation could have employed Georgia models exclusively. We thus see this knowledge as irrelevant. Second, Holcomb once referred to some of the models working in Houston as "the Minnesota blondes." The entire conspiracy case against him therefore boils down to whether this one statement suggests his knowledge that the models came to Texas from Minnesota for the purpose of prostitution. We are unwilling to make this inference. These days, many people in Texas hail from other states. Knowledge of this fact alone is simply insufficient to raise reasonable suspicions of Holcomb's *mens rea*. This being so, we conclude that no evidence suggests his knowing agreement to violate the Mann Act and the Travel Act. Holcomb's conviction under Count One must therefore be reversed.

■ For the same reason, Holcomb's convictions under the Travel Act counts must be reversed. These counts charge that Holcomb violated the Travel Act by serving as Hatteras's accomplice. Under federal law, an accomplice is tried as though he were a principal in the crime. 18 U.S.C. § 2. To show one's guilt as an accomplice, however, the Government must prove that the defendant associated with a criminal venture, participated in the venture, and sought by his actions to make the venture succeed. *United States v. Eddy*, 597 F.2d 430, 433 (5th Cir.1979). One can "associate" with a criminal venture only if he shares the principal's criminal intent. *United States v. Colwell*, 764 F.2d 1070, 1072 (5th Cir.1985). As we have already concluded, the Government presented insufficient evidence to establish Holcomb's knowledge of illegal interstate travel. It follows that he cannot be found guilty of knowing association with Hatteras's criminal venture. Remembering again that the crime involved is not prostitution, but is instead interstate travel for the purpose of prostitution, we hold that Holcomb lacks the *mens rea* necessary to be found guilty.

His convictions under Counts Two, Four, Six, Eight, Ten, Twelve, and Fourteen must therefore be reversed.

■ Holcomb finally argues that insufficient evidence supports the jury's guilty verdicts on the telephone counts (Counts Sixteen through Twenty-one). These counts charge that defendants violated the Travel Act by making interstate telephone calls to facilitate prostitution. Holcomb argues that he cannot be guilty of these charges because no evidence suggests his participation in any of these calls. In so arguing, however, Holcomb fails to grasp the concept of accomplice guilt. Because of 18 U.S.C. § 2, he need not have been actually involved in the telephone calls to be found guilty under the Travel Act, so long as he aided and abetted those who did call.

With these counts, as with the others, however, the Government failed to adduce sufficient evidence to support his convictions. In cross-examining Holcomb, the Government elicited an acknowledgment that, as Hatteras's accountant, he paid the phone bills of her businesses. The phone bills, introduced into evidence, show hundreds of calls to Atlanta. So far, so good. The Government's effort ended there, however. Holcomb was not pressed for any details about these bills. Consequently, the evidence gives no indication that he knew of the particular calls made. Even if he did scrutinize the bills to determine where calls were going, we see no sign that he knew the calls were to Hatteras's Atlanta office; no testimony, for example, answers the simple question whether he knew the phone number of her Atlanta operation. Before us, in arguing that sufficient evidence exists, the Government points only to evidence that he received a telephone call or two from an Atlanta model. We know nothing of the subject of these conversations, however, and are unwilling to let them stand as proof that he knew of regular communications between the Houston and Atlanta offices, communications spanning several months and consisting of hun-

dreds of telephone calls. His convictions under the telephone counts must be reversed.

 The case against Wallach is much different; on this record no doubt could exist that he was deeply and knowingly involved as Hatteras's assistant in the operation. We need not belabor the obvious; his guilt under the conspiracy and Travel Act counts is clear. Judgment against Wallach is therefore AFFIRMED in part, and REVERSED in part; judgment against Holcomb is REVERSED.