UNITED STATES of America, Plaintiff–Appellee,

v.

Robert Marc EDELMAN, Defendant–Appellant.

No. 88–1258.

United States Court of Appeals, Fifth Circuit.

May 15, 1989.

Rehearing and Rehearing En Banc Denied June 13, 1989.

---

792

John H. Hagler, Dallas, Tex., for defendant-appellant.

Mark L. Nichols, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, HIGGINBOTHAM, Circuit Judge, and FISH,* District Judge.

PER CURIAM:

Robert Marc Edelman appeals his convictions for conspiracy to use, and aiding and abetting another in the use of, interstate commerce facilities in the commission of murder for hire, in violation of 18 U.S.C. § 1952A. We affirm, finding that the use of interstate commerce facilities is a jurisdictional requirement only and the government need not prove that Edelman had knowledge of or intended the use of such facilities.

*Facts*

In October 1986, Robert Marc Edelman hired James Young, a private investigator, to follow Edelman's estranged wife. Young followed Mrs. Edelman for the next two months, then made spot checks on her through June 1987. According to Young, in January 1987, Edelman told him that he wanted his wife killed and he wanted it to look like a robbery. Young agreed to do the job, but did not intend to kill Mrs. Edelman himself. Instead, he asked an old Army friend, Fred Zabitosky, to commit the murder. Zabitosky told Young that he would not kill Mrs. Edelman, but he knew a man named Jack who might do it. Young then sent a letter to Zabitosky through the United States mail, instructing him to find someone to help with the murder. Zabitosky contacted the FBI, and Special Agent Gerald Hubbell was introduced to Young as Jack, a professional killer.

Young met with Hubbell on several occasions to plan the murder. He gave Hubbell a diagram of Mrs. Edelman's house and instructed him that his client wanted the killing to look like a robbery. He even

---

* District Judge of the Northern District of Texas, sitting by designation.

provided dates when Mrs. Edelman's children would be away. The FBI set up a hoax killing of Mrs. Edelman, and Hubbell then informed Young that the job was done. Young immediately telephoned Edelman's house to tell him his wife had been killed. Young was arrested when he tried to pay Hubbell for the murder. He offered to cooperate with agents, and implicated Edelman in the scheme.

Both Young and Edelman were charged with violations of 18 U.S.C. § 1952A, conspiracy to use interstate commerce facilities to commit a murder for hire and aiding and abetting another in the commission of that offense. Young pled guilty, and was the government's chief witness at Edelman's trial. Edelman maintained throughout the trial that he had never asked Young to kill his wife, that in fact he had terminated Young's employment, and that Young was acting on his own when he "hired" Agent Hubbell to kill Mrs. Edelman. The jury returned a guilty verdict, and the court assessed punishment of five years imprisonment and a $50,000 fine on each count, the sentences to run consecutively. Edelman raises four errors on appeal.

### Discussion

### I. Sufficiency of Evidence

#### A. Generally

Edelman urges that the evidence on the whole was insufficient to support his convictions. The basis of this argument is that Young, the government's chief witness, was not credible, and without his testimony the other evidence did not support conviction. The standard of review on a sufficiency of the evidence claim is whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence is viewed in the light most favorable to the government.

In this case, Young testified at length as to his involvement with Edelman. The jury could have convicted Edelman based solely on Young's uncorroborated testimony, provided it was not incredible or insubstantial on its face. *United States v. Moreno,* 649

F.2d 309, 312 (5th Cir.1981). The jury is ultimately responsible for determining the credibility of the witness, and the appellate court will not interfere with that decision unless the testimony on its face is so unbelievable "that it defies physical laws." *United States v. Lerma,* 657 F.2d 786, 789 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982). The jury here obviously concluded that Young's testimony was believable and Edelman's was not. There is no justification for disturbing that determination. Although Young's testimony alone was sufficient to support the convictions, the government introduced other substantial, supporting evidence.

Edelman testified he had agreed to pay Young $50 per hour, plus expenses of $2000, for his investigative services. Young, however, testified that he kept a notebook in which he recorded his meetings with Edelman and the payments he received. The entries in that notebook reflected that as of July 16, 1987, Young had received $24,000 from Edelman. Bank records for Edelman corroborated large withdrawals from his account with the dates Young noted he received payments. Agent Hubbell gave Young some photographs of Mrs. Edelman and told him to take the photographs to his client to be sure they had the right woman. The next day, Young met Edelman in a restaurant, where FBI Agent Israelson overheard Young ask "Is that her?". Edelman responded affirmatively. Finally, two minutes after he was informed that Mrs. Edelman was dead, Young placed a one minute telephone call to Edelman's residence. This evidence, along with Young's testimony, amply supported the jury's verdict on both counts.

#### B. Knowledge of Use of Interstate Facilities

Edelman's primary contention concerning the proof is a legal one. He asserts specific intent that interstate commerce facilities be used in the commission of the murder is an essential element to prove a violation of § 1952A. He points

out that according to the government's own witness, he had no knowledge that anyone other than Young would commit the offense, and he had no knowledge or intent that Young would use the mails to further the murder plan. Therefore, according to Edelman, the evidence was insufficient to support a conviction for either conspiracy or aiding and abetting.

There is no case law addressing the application of this issue under § 1952A. The legislative history, however, reveals that "section 1952A follows the format of present § 1952." S.Rep. No. 225, 98th Cong., 29 Sess. 306, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3485. Section 1952, the Travel Act, provides: "Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail with intent to...." Section 1952A reads: "Whoever travels in or causes another ... to travel in interstate or foreign commerce, or uses or causes another ... to use the mail or any facility in interstate or foreign commerce with intent that a murder be committed...." The obvious purpose of § 1952A is to supplement § 1952. Therefore, it is appropriate to review Edelman's conviction in light of this court's interpretations of the Travel Act.

In *United States v. Perrin*, 580 F.2d 730 (5th Cir.1978), *aff'd on other grounds*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), this court stated that "[u]nder the Travel Act, specific intent is required to violate state law. There is no requirement that the defendant either have knowledge of the use of interstate facilities or specifically intend to use interstate facilities...."

This view that proof of an interstate nexus is merely a jurisdictional prerequisite, not an essential element of the crime, is in harmony with the majority of circuits and with the legislative history of § 1952A. *See United States v. Sigalow*, 812 F.2d 783, 785 (2d Cir.1987); *United States v. McPartlin*, 595 F.2d 1321, 1361 (7th Cir. 1979), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States v. Villano*, 529 F.2d 1046, 1054 (10th Cir.),

*cert. denied*, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193 (1976); *United States v. Le-Faivre*, 507 F.2d 1288, 1297–98 (4th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975); *United States v. Sellaro*, 514 F.2d 114, 120–21 (8th Cir. 1973), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975); *United States v. Roselli*, 432 F.2d 879, 891 (9th Cir.1970), *cert. denied sub nom. Teitelbaum v. United States*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *see also* S.Rep. No. 225, 98th Cong., 2d Sess. 305, *reprinted in* 1984 United States Code Cong. & Admin. News 3182, 3484.

However, two recent decisions of this court have arguably adopted the opposite view. In *United States v. Stanley*, 765 F.2d 1224, 1243 (5th Cir.1985), the Court reversed convictions for aiding and abetting a Travel Act violation, citing an absence of any evidence that the defendants specifically aided the interstate travel of a co-indictee. Insufficient evidence that the defendant had knowledge of the interstate travel or use of the interstate facility was also the basis of reversing a Travel Act conviction in *United States v. Holcomb*, 797 F.2d 1320, 1328–29 (5th Cir.1986). Neither *Stanley* nor *Holcomb* address this court's earlier *Perrin* decision or any other case law establishing that proof that the defendant had knowledge of the federal nexus is not required to sustain a conviction under the Travel Act.

Under the principle of stare decisis, the older case law must control. *See Sharpe v. Seaboard Coast Line Railroad*, 528 F.2d 546, 548 (5th Cir.1976). If this were an action under the Travel Act we would be obliged to follow the prior holding in *Perrin*, not the subsequent inconsistent decisions in *Holcomb* and *Stanley*. In this case, however, we are dealing not with § 1952, but with § 1952A. Although we deal with circuit precedent by analogy rather than as directly controlling, the same rule of stare decisis must be applied. We thus adopt as the correct analysis of the jurisdictional requirement under § 1952A

the majority position espoused in *Perrin*.[1]

Section 1952A requires proof of specific intent that a murder be committed for pecuniary gain. The jurisdictional language was added to provide for the use of federal investigative and prosecutorial resources in cases where local investigation might be hampered by jurisdictional limitations. It is enough, therefore, that the proof showed the mails were in fact used in the commission of that offense and that Edelman had knowledge of the nature of the substantive offense which he promoted. The government need not establish that Edelman intended that the mail be used or that he even knew the mail was used. The government presented sufficient evidence on all essential elements of the crimes charged to sustain the convictions.

## II. Use of Expert Testimony

■ At the trial, Edelman offered the testimony of Dr. Robert Shuy, a linguistics expert, to prove that Edelman had not hired Young to kill his wife. Dr. Shuy testified that he had analyzed conversations in four murder-for-hire cases and had distilled ten common stages in such conversations. At a hearing conducted outside the jury's presence, Dr. Shuy stated that after analyzing tape-recorded conversations in this case, it was his opinion that Young was not authorized by any client to contract for Mrs. Edelman's murder. The trial court excluded the testimony on two grounds. One, the testimony would merely interpret language in ordinary usage and would not assist the jury. Two, any probative value of the testimony was outweighed by a substantial danger of undue prejudice and confusion. Edelman maintains that the trial court abused its discretion by excluding this "expert" testimony, and that the exclusion violated his sixth amendment right to have compulsory process for obtaining witnesses in his favor.

Federal Rule of Evidence 403 gives the trial court broad discretion to exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury. The trial judge, having heard the testimony, is in the best position to determine whether such testimony would be confusing or misleading to the jury. Absent an abuse of discretion, his ruling should stand. Considering the highly unusual nature of the opinion evidence proffered about matters within the common knowledge of the jury, there was no abuse of discretion here.

## III. Admission of Plea Agreement

During Young's testimony at Edelman's trial, the prosecution questioned him regarding his plea agreement with the government. The agreement itself was then offered into evidence. Edelman argues that the introduction of the agreement improperly bolstered Young's credibility, since the agreement reflected that Young would be prosecuted for perjury if he did not testify completely and accurately. Admission of a plea agreement wherein the witness has agreed to testify truthfully or face prosecution for perjury is not impermissible bolstering of the witness. *United States v. Martino*, 648 F.2d 367, 389 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). Further, defense counsel questioned Young at length about the plea agreement and other requests for immunity, thereby making the existence of any plea agreement an issue. The trial court did not err in admitting the plea agreement into evidence.

## *Conclusion*

The district court's judgment of conviction is affirmed. The use of interstate commerce facilities as required by § 1952A is jurisdictional only, and evidence of specific intent that such facilities be used is not necessary for conviction.

AFFIRMED.

---

**1.** This opinion has been circulated to all active judges of the court, who agree with the disposition of this issue and the panel's reliance on *Perrin* and rejection of *Holcomb* and *Stanley*.