# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 25, 2011

No. 09-60564

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

CHARLES MCCULLOUGH; CHARLES W GAVIN,

Defendants–Appellants

Appeals from the United States District Court
for the Southern District of Mississippi

Before WIENER, GARZA, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

The United States indicted five defendants for conspiring to travel in and use interstate commerce facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958. The Government dismissed one of the defendants before trial. At trial, the Government presented evidence of a conspiracy hatched at a federal prison to kill a Mississippi state prosecutor. The district court granted motions of acquittal for two more of the defendants at the close of the Government's case-in-chief. A jury convicted the two remaining defendants, Charles W. Gavin and Charles McCullough ("Defendants").

Defendants appeal their convictions on four grounds. First, they argue that the district court violated their Sixth Amendment right to confront adverse

witnesses by limiting the scope of their cross-examination of the Government's key witness. Second, they claim that the Government failed to present sufficient evidence for a reasonable jury to find a conspiracy to commit murder-for-hire beyond a reasonable doubt. Specifically, Defendants claim that the Government did not prove that there was an agreement between Gavin and McCullough, or that "anything of pecuniary value" was paid or promised to be paid. Third, Defendants claim that they were denied due process and a fair trial because of a "fatal variance" between the redacted indictment and the evidence presented at trial. Finally, Defendants claim that the Government misled the jury in its closing argument by referring to one of the dismissed co-conspirators and improperly providing her last name where one of the Defendants had used her first name only.

We affirm the convictions.

## I.  FACTUAL & PROCEDURAL BACKGROUND

In 1999, Grenada County, Mississippi District Attorney Charles Douglas Evans prosecuted Gavin pursuant to Mississippi's habitual-offender statute for four counts of being a felon in possession of a weapon. A jury convicted Gavin on all counts, but the Mississippi Court of Appeals overturned the convictions, allowing retrial on only one of the counts. Because Gavin was at the time incarcerated at Yazoo City Federal Correctional Complex ("Yazoo City FCC") after conviction of federal drug crimes, Evans placed a detainer on Gavin so that the federal prison officials would not release Gavin until the Grenada County prosecutors had an opportunity to retry him. Gavin was due to be released from Yazoo City FCC in 2011. In early 2008, however, Gavin became hopeful that the new crack cocaine sentences reduction law might provide an opportunity for early release. Despite this, Gavin was allegedly concerned that the detainer in Grenada County and Evans's desire to charge him for the earlier crime might prevent his release and instead lead to life imprisonment.

No. 09-60564

In 2007, after arriving at Yazoo City FCC, fellow prisoner and previous Federal Bureau of Investigation ("FBI") informant Frederick McCloud began regularly playing chess with Gavin. McCloud testified that after he told Gavin about his background in Detroit and his conviction for armed robbery and firearm possession, Gavin asked him if he was still in contact with people from Detroit, including acquaintances who performed "hits." Gavin allegedly asked him whether he was willing to talk to someone in Detroit about performing a murder-for-hire on Evans, and he offered $20,000 to have Evans murdered. McCloud contacted the FBI about Gavin's proposal, and on April 21, 2008, McCloud met with Special Investigative Agent Rick Brawley of the Federal Bureau of Prisons ("BOP") and FBI Agent Robert Bohls. Brawley provided McCloud with a Detroit phone number for a fictitious hitman, "Ed," who was actually an FBI agent in possession of that cell phone number. McCloud then passed the phone number on to Gavin.

McCloud further testified that although Gavin was hesitant to give money directly to McCloud for the murder, they eventually agreed to have McCloud execute a Uniform Commercial Code ("UCC") financing statement. Two other inmates witnessed and signed the agreement, which stated that Gavin gave McCloud "full authority . . . to retrieve . . . $22,500 from one or both CDs that [Gavin is] pledging as collateral," and provided the banks and numbers for the two accounts.[1] None of this money was ever deducted from Gavin's accounts.[2]

Subsequently, Gavin obtained Evans's home address from Linda Salley, Gavin's girlfriend at the time and one of the original five defendants. McCloud testified that Gavin then gave him Evans's address to give to "Ed." After

---

[1] Above the $20,000 for the murder, $2,000 was for "Ed's" travel expenses, and the extra $500 was a typing fee for McCloud.

[2] Gavin had $6,525.62 in one of the accounts as of June 11, 2008, and $83,518.27 in the other as of May 20, 2008.

3

McCloud provided "Ed's" phone number to Gavin, he claims that Gavin told him that "his people" were trying to get in touch with "Ed," and after several failed attempts, Gavin informed him that "his people" had gotten in touch with "Ed," and "now everything is on you."

The actual calls to "Ed" were placed by Amanda Stacy, an original defendant and Charles McCullough's then-girlfriend. McCullough was at that time an inmate at Yazoo City FCC as well. Recordings indicate that on several occasions between May 10 and May 12, 2008, McCullough called Stacy and asked her to relay a message to "Ed." After McCullough had Stacy assure him that she was able to place a call without the recipient seeing her number, he gave her "Ed's" number and asked her to call him, identify herself as "Lady L," and deliver a message. McCullough stressed the urgency of the call and then asked her to convey the following message:

> McCloud . . . said it's ok for Charlie Gavin to call you. . . . Charlie told me to leave you this message. You got a pen and paper. . . . Doug is a white guy . . . [a]bout 5'8", five [] feet, eight inches tall . . . . around fifty-seven years old. . . . [b]etween 210 to 240. . . . [a]fter you take care of Doug . . . Charlie said call this number. . . 662 . . . this the area code . . . 637-2110 . . . [a]nd ask for M-A-E-R-E-E . . . .[o]r leave a message sayin' tell Charlie I sent you this paperwork off today. . . . Put that in quotation, tell Charlie I sent you this paperwork off today . . . that way, he will know that Doug has been taken care of. [H]e said he's going to give M-C-C-L-O-U-D, . . . [t]wo grand for your travel expenses . . . [a]nd he guaranteed that you will get your twenty the first day he get home . . . .

After several failed attempts to reach "Ed," McCullough told her to leave a message, but Stacy refused, saying "I wouldn't wanna leave a message soundin' nothin' like that where just anybody might hear it." The following day, Stacy reached "Ed," relayed the message, and informed McCullough of its delivery.

On June 25, 2008, a grand jury returned a one-count indictment charging Gavin, McCullough, Stacy, Salley, and Mae Ree McMillian with violating 18

No. 09-60564

U.S.C. § 1958 by conspiring to travel and use a facility of interstate commerce with the intent to murder two people by promising to pay a sum of money in return for the murders. Prior to trial, the government dismissed the indictment against McMillian. The Government proceeded to trial on the conspiracy charge against the remaining four defendants, but decided to present evidence relating only to the conspiracy to murder Evans, omitting reference to the "second victim."[3]

At trial, the Government called fifteen witnesses, including McCloud. McCloud's testimony was central to the Government's case. He testified as to his background, his relationship with Gavin, and his interactions with the FBI and with Gavin that ultimately led to Gavin's arrest. The Government also elicited testimony from McCloud about his previous convictions for "kidnapping, extortion, and felony firearm" and two counts of bank robbery. McCloud also admitted to filing false "UCCs" against his prosecutors in Michigan, and that in exchange for his testimony in this case, the Government had filed a "Rule 35" recommendation for a downward departure in his current sentence for armed robbery. On cross-examination, counsel for all four defendants elicited information concerning the basics of McCloud's prior convictions, his filing of false UCC forms against government officials, previous false statements to an FBI agent, lying to a federal judge, and the Government's request to reduce his sentence in exchange for his testimony.

The district court did, however, restrict the scope of defense counsels' cross-examination about McCloud's prior convictions to "whether he was convicted, what the crime was, when he was convicted and what his sentence was." Defense counsel had wanted to introduce evidence from McCloud's two prior convictions for robbery to show that he had carjacked a bank teller at

_____

[3] "Victim 2" in the indictment was a witness against Gavin at his state trial in Grenada County, Mississippi.

gunpoint, held a gun to a pregnant woman's head, and placed a pipe bomb in the proximity of hostages, in response to McCloud's assertion that "he was not into taking lives" and has "never been into murder." Additionally, after McCloud testified that the tips he had previously provided to the FBI "have always been true and panned out for them," the court denied Defendants' attempt to introduce a previous filing by a government prosecutor in McCloud's armed robbery case that mentioned instances of his untruthfulness.

At the close of the Government's case-in-chief, the court granted Stacy's and Salley's motions for acquittal. This left Gavin and McCullough as the sole remaining defendants. The court provided a redacted indictment to the jury with the names of McMillian, Stacy, and Salley removed from the grand-jury charge, but with references to all three remaining in the indictment. The redacted indictment also eliminated two references to "Victim 2," but retained a reference to the "murder of two different persons" and another reference to "Victims 1 and 2."

Further, relevant to this appeal, the Government's closing argument sought to link McCullough's reference to "Mae Ree" in his call to Stacy to the presence of a "Mae Ree" on Gavin's approved visitor list. The Government referred to the "Mae Ree" in McCullough's call as "Mae Ree McMillian," the dismissed defendant, and noted that her phone number given in the call was the same phone number as the "Mae Ree" listed on Gavin's visitor log. McCullough had referred only to a "Mae Ree" in his call to Stacy and had not used a last name. Defendants did not make any objection.

On April 28, 2009, the jury returned guilty verdicts against both Gavin and McCullough. Defendants timely appealed.

## II. DISCUSSION

A.    **Limitation of Defendants' Cross-Examination of McCloud**

No. 09-60564

Defendants claim that the district court denied them their Sixth Amendment right to confrontation by restricting their ability to cross-examine McCloud about his "prior convictions, violent nature, and propensity to lie under oath." They specifically object to the court's decision to disallow their inquiry into the details of McCloud's prior crimes, including the court's restriction of their use of a document from McCloud's federal armed-robbery case to impeach his truthfulness.

"We review alleged violations of a defendant's Sixth Amendment confrontation right de novo." *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (citing *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004)). "Such claims, however, are subject to harmless error review." *Id.* (citing *Bell*, 367 F.3d at 465). "If there is no constitutional violation, then we review a district court's limitations on cross-examination for an abuse of discretion, which requires a showing that the limitations were clearly prejudicial." *United States v. Jimenez*, 464 F.3d 555, 558–59 (5th Cir. 2006) (citing *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993)).

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting U.S. CONST. amend. VI). This right includes allowing the cross-examiner "to impeach, i.e., discredit, the witness." *Id.* at 316. A defendant's Confrontation Clause rights are satisfied when defense counsel is "'permitted to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Restivo*, 8 F.3d at 278 (quoting *Davis*, 415 U.S. at 318). Further, a district court retains "wide latitude . . . to impose reasonable limits on cross examination based on concerns about, among other things, harassment, prejudice, [or] confusion of the issues . . . ." *Skelton*, 514 F.3d at 439 (quoting *Delaware v. Van Ardsall*, 475 U.S. 673, 679 (1986)).

No. 09-60564

Defendants' arguments that their confrontation rights were violated are unpersuasive; their opportunity to cross-examine McCloud was more than sufficient for the jury to draw inferences relating to his reliability as a witness. The court allowed defense counsel to question McCloud about numerous issues that implicated both his motivation to lie and his previous history of dishonesty and untruthful behavior. This included admissions of lying in federal court and to an FBI agent, several frivolous and harassing legal filings against federal prosecutors, the government's offer to try to reduce his sentence in exchange for his cooperation, and basic information about his convictions for armed robbery, kidnapping, extortion, illegal firearm possession, and driver's license forgery and alteration. The only areas on which the district court prohibited inquiry were the descriptions of McCloud's actions during the armed robberies and the introduction of a previous filing by a government prosecutor in McCloud's armed robbery case concerning instances of his untruthfulness. The court excluded both under Rule 403; this is well within the discretion of the court. *See Skelton*, 514 F.3d at 439.

Further, the court's restriction of defense counsels' cross examination was not an abuse of discretion. A district court's limitation on cross-examination is an abuse of discretion only if the limitation "was clearly prejudicial," meaning that the defendant demonstrates that "a reasonable jury might have had a significantly different impression of the witness's credibility if defense counsel had been allowed to pursue the questioning." *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004). The evidence excluded here was merely cumulative of evidence already offered about McCloud's prior untruthfulness in court and to government agents, and specifics about prior crimes properly excluded under Rule 403. *See United States v. Mizell*, 88 F.3d 288, 294 (5th Cir. 1996) (noting that there was no error where the impeachment evidence excluded was cumulative).

No. 09-60564

## B.    Sufficiency of the Evidence of Conspiracy

Defendants argue that the Government's evidence was insufficient to convict Defendants under 18 U.S.C. § 1958.  Specifically, they contend that the Government failed to offer sufficient proof (1) of an agreement between Gavin and McCullough to commit murder-for-hire, and (2) that something "of pecuniary value" was received, promised, or agreed to be paid.

We review a challenge to the sufficiency of the evidence for "whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence is viewed in the light most favorable to the government." *United States v. Edelman*, 873 F.2d 791, 793 (5th Cir. 1989). [T]his court asks only whether the jury's verdict was rational, not whether it was correct." *United States v. Rodriguez*, 553 F.3d 380, 389 (5th Cir. 2008).

In order to convict a defendant under 18 U.S.C. § 1958, the government must prove beyond a reasonable doubt an agreement to (1) travel in or cause another to travel in interstate commerce, or use or cause another to use a facility of interstate commerce, (2) with the intent to commit murder "in violation of the laws of any State or the United States," (3) "for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value."  18 U.S.C. § 1958.  Additionally, proving the conspiracy requires proof of "(1) an agreement by two or more persons to achieve the unlawful purpose . . . ; (2) the defendant's knowing and voluntary participation in the agreement; and (3) an overt act committed by any one of the conspirators in furtherance of the conspiratorial object." *United States v. Blackthorne*, 378 F.3d 449, 453 (5th Cir. 2004) (quoting *United States v. Hernandez*, 141 F.3d 1042, 1053 (11th Cir. 1998)).

### 1.    Evidence of an Agreement Between Gavin and McCullough

Defendants argue that the Government failed to prove a conspiratorial agreement between Gavin and McCullough because the only alleged connections between them are a letter Gavin wrote to another inmate that McCullough had

in his possession, and the phone call McCullough made to Stacy, which they claim are not evidence of a conspiracy. They further emphasize Special Agent Bohls's admission that there was "no direct evidence" that McCullough knew that Gavin wanted Evans killed.

While the Government must prove an agreement between Gavin and McCullough to carry out murder-for-hire,[4] this proof "does not need to show that the conspiratorial agreement was explicit or formal—proof of a tacit agreement is sufficient." *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005). Further, a jury may infer an agreement based on circumstantial evidence; direct evidence is not required. *See United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989) (noting in the context of a drug distribution conspiracy that "[t]he jury may infer any element . . . from circumstantial evidence" and may infer an agreement from concert of action).

The Government here presented sufficient evidence for a reasonable jury to find an agreement between Gavin and McCloud. McCullough's phone calls to Stacy show not only his involvement in the conspiracy, but allow an inference of a direct link to Gavin. In the calls, McCullough provided information that could only have originated from Gavin: a physical description of Evans. Additionally, McCullough provided "Ed's" phone number to Stacy and referenced Gavin twice in the phone call. McCloud further testified that Gavin told him that "his people" were taking care of the call to "Ed." Based on the information from McCullough's call, it is reasonable to infer that Gavin asked McCullough to make this call, and the content of the call further provides evidence of McCullough's agreement to participate in the conspiracy. The letter from Gavin

---

[4] The government must prove the conspiracy between McCullough and Gavin, as McCloud, a government informant, cannot be considered part of the conspiracy. *See United States v. Manotas-Mejia*, 824 F.2d 360, 365 (5th Cir. 1987) ("[T]here can be no conspiracy between one defendant and a government informer.").

to the other prisoner that McCullough had in his possession creates another factual basis to infer a relationship between Gavin and McCullough, strengthening evidence of an agreement.

While McCullough's involvement in the conspiracy was not extensive, the jury had sufficient evidence to reasonably infer an agreement between Defendants.

### 2.   Promise or Agreement to Pay Money for the Murder

Defendants further contend that the UCC form signed by Gavin and McCloud was merely one of McCloud's "scams," is "utterly valueless and useless," and thus is not indicative of a promise to pay. This contention is without merit.

Section 1958 explicitly contemplates a *promise* to pay thing of pecuniary value. *See* 18 U.S.C. § 1958. Whether the UCC form itself had value is irrelevant so long as it represented a legitimate promise to pay. As the Eleventh Circuit has held, § 1958 "does not import all of contract law." *Hernandez*, 141 F.3d at 1057. The presence of "a quid-pro-quo (or at least the promise of such) between the parties to the transaction" is enough to satisfy the statutory requirements. *Id.* It is undisputed that Gavin signed the form, provided information about his bank account, and had sufficient money in his accounts to pay the "hitman." Thus, the evidence is sufficient for the jury to reasonably find that Gavin promised to pay for the murder. Whether the UCC form itself had inherent value is not a necessary determination in light of the evident promise to pay made by Gavin.

### C.   Variance Between the Indictment and Proof at Trial

Defendants next argue that because the Government offered proof of only one victim, yet referred to two victims in the indictment, this constituted a material variance between the indictment and the proof at trial. Because

No. 09-60564

Defendants failed to properly object to the redacted indictment at trial,[5] we review Defendants' claim under a plain error analysis. *See United States v. Millet*, 123 F.3d 268, 272 (5th Cir. 1997). "Mere factual variations between the indictment and proof at trial are examined under the harmless error doctrine." *Id.*

"A material variance occurs 'when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense.'" *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007) (quoting *United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005)). Even if the court finds a material variance, reversal is proper "only if the variance prejudiced the defendant's substantial rights," employing a harmless error analysis. *Id.*

The redacted indictment provided to the jury contains two brief references to a "Victim 2." The Government made no mention of any second victim during trial, purposefully limiting its case to the conspiracy to kill Evans. While this discrepancy is surely a "variance," it is just as surely not "material." The references to a "Victim 2" in the indictment do not affect in any way the "scenario" that the indictment depicts: the plan to kill Evans. The remaining mentions of a "Victim 2" are merely part of the general boilerplate allegations. Therefore, the variance cannot be considered material.

## D.    Error in the Government's Closing Argument

Defendants also allege that the Government's assertion in its closing argument that McCullough's call to Stacy referenced "Mae Ree McMillian" was

---

[5] Prior to closing argument, Gavin's counsel brought up that the indictment still mentioned two victims. He could not, however, decide whether to lodge an objection to the indictment, noting that "I would like to, I guess, leave it in and say there was no proof of that." Counsel for another defendant changed the subject before any decision was reached. Later, immediately before closing argument, counsel was presented with the redacted indictment that the court was to give to the jury. The court provided an opportunity for objections, and counsel made none.

No. 09-60564

error, as McCullough only referred to a "Mae Ree" and did not provide a last name. Defendants did not object at trial to the Government's closing statement. Therefore, "this court will review any improper remark only for plain error." *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005).

Although the Government did erroneously place a last name on the "Mae Ree" McCullough referred to in the call, this did not change the substance of its argument. The Government sought to link the "Mae Ree" in McCullough's call to the "Mae Ree McWilliams" on Gavin's visitor list, as the phone number on that list and the phone number given in McCullough's call was the same. The addition of the last name gave the Government's argument little more persuasive weight. Therefore, even though McCullough did not identify "Mae Ree" by any particular last name in the call, adding a last name in the closing argument did not substantially prejudice Defendants.

### III.  CONCLUSION

The Government offered sufficient evidence to convict Defendants at trial, and Defendants' Confrontation Clause rights were not violated by the district court's reasonable limitations on cross-examination. Because of this, and because Defendants' other arguments are unpersuasive, we affirm Defendants' convictions.

AFFIRMED.

WIENER, Circuit Judge, concurs in the judgment only.

13