NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 21 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| UNITED STATES OF AMERICA, | No. 22-10034 |
|---|---|
| Plaintiff-Appellee, | D.C. No. 1:18-cr-00070-DKW-KJM-12 |
| v. | |
| ROBERT BEAL, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Derrick K. Watson, Chief District Judge, Presiding

Argued and Submitted October 4, 2023
Honolulu, Hawaii

Before: BERZON, MILLER, and VANDYKE, Circuit Judges.
Dissent by Judge BERZON.

As part of an ongoing FBI investigation into a drug conspiracy operating in

Hawaii and the continental United States, law enforcement officers arrested

Defendant-Appellant Robert Beal in Dayton, Ohio and seized a backpack containing

two vacuum-sealed packages of suspected narcotics. Beal was later convicted of

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

conspiracy to distribute methamphetamine, fentanyl, and cocaine in violation of 21 U.S.C. § 846.

Beal appeals his conviction, contending that (1) the district court should not have admitted the seized narcotics; (2) his indictment was untimely; (3) the evidence was insufficient to support his conviction; (4) venue was improper in Hawaii; and (5) the district court wrongly refused his request for a specific unanimity instruction. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

*First*, the district court properly admitted the drug evidence. To establish the admissibility of evidence through a chain of custody, the government "must introduce sufficient proof so that a reasonable juror could find that the [seized items] are in 'substantially the same condition' as when they were seized." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960)). Where, as here, the admissibility inquiry is "factual in nature," "we review the district court's ruling for abuse of discretion," *United States v. Fryberg*, 854 F.3d 1126, 1131 (9th Cir. 2017), and its factual findings "for clear error." *United States v. Whittemore*, 776 F.3d 1074, 1077 (9th Cir. 2015).

Beal focuses his admissibility argument on eight days during which the drugs were not expressly accounted for on the chain-of-custody form. After the bust, the Dayton FBI office initiated a chain-of-custody form for the seized narcotics and sent

2

them to the FBI lab in Quantico, Virginia. Eight days later, a package containing drug evidence and the Dayton chain-of-custody form arrived at the Honolulu FBI office. Because Quantico has no record of the package arriving or leaving its lab during those eight days, Beal argues that the drugs should not have been admitted at trial.

In an order affirming the drugs' admissibility, the district court relied on an incorrect factual finding that a Dayton FBI employee labeled the drugs with file number "245C-HN-5788811" when the record demonstrates that file number was not associated with the drug evidence until well after it arrived in Honolulu. But even though the district court incorrectly relied on that finding, it nonetheless properly admitted the evidence notwithstanding the gap in custodial documentation because other evidence in the record was sufficient for admissibility.

First, the chain-of-custody form is itself relevant evidence because it (1) was signed by FBI employees in both the Dayton and Honolulu offices, (2) left Dayton with the seized narcotics, and (3) later arrived in Honolulu in a package containing drug evidence. Second, the seized narcotics were at all times associated with that chain-of-custody form and a Honolulu file number, even if that number was not always "245C-HN-5788811."[1] Finally, the prosecution bridged the eight-day

---

[1] A "Honolulu file number" means that the Honolulu office is the "owning office" of the evidence. File numbers that include "HN" indicate that Honolulu is the

documentary gap in the chain of custody with testimony from a Quantico lab analyst, who explained that the lab's policy upon receiving such a package was to temporarily store it and then ship it to the owning office, but not to test it or to initiate Quantico's own chain of custody. Taken together, this evidence supports a reasonable inference that the drugs were in "substantially the same condition" at trial as when they were seized, notwithstanding the eight-day gap in the chain-of-custody form. *Harrington*, 923 F.2d at 1374 (quoting *Gallego*, 276 F.2d at 917).

Beal also observes that the seized narcotics tested positive for cocaine in a field test, which conflicts with the later lab result for fentanyl. The district court concluded that the field test was not in evidence at trial. Assuming it was, it does not affect the drugs' admissibility because a reasonable juror could still infer the authenticity of the narcotics from the aforementioned evidence. Despite Beal's arguments to the contrary, the drugs were properly admitted.

*Second*, because the timeliness of an indictment is a legal question, our review is de novo. *United States v. Leo Sure Chief*, 438 F.3d 920, 922 (9th Cir. 2006). The first indictment naming Beal was returned within the five-year statute of limitations, *see* 18 U.S.C. § 3282(a), but the Third Superseding Indictment, which added the fentanyl allegation, was not. "A superseding indictment returned while the first

---

owning office. Only two file numbers were associated with the seized narcotics, both included an "HN," and both were written on the chain-of-custody form.

4

indictment is pending is timely unless it broadens or substantially amends the charges in the original indictment." *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 778–79 (9th Cir. 1986) (cleaned up).

To determine whether the superseding indictment "broadens or substantially amends" the original charges, we consider "whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *United States v. Liu*, 731 F.3d 982, 996–97 (9th Cir. 2013) (internal quotations omitted). For the following reasons, we conclude that the Third Superseding Indictment did not do so.

First, it alleged a violation of the same statute as the earlier indictments naming Beal: 21 U.S.C. § 846. Second, because the charging statute did not change, the underlying elements of the offense did not change, either. Third, proving the seized narcotics were fentanyl required no additional evidence. Even though the test result came back positive for fentanyl instead of another illegal narcotic, the physical evidence remained the same. Finally, the addition created no risk of an increased sentence. Conspiracy is punishable by the same penalties as those prescribed for the underlying offense. *See* 21 U.S.C. § 846. Earlier indictments had already charged Beal with conspiracy to distribute "50 grams or more of methamphetamine," which, like conspiracy to distribute "400 grams or more of a mixture or substance containing a detectable amount of [fentanyl]," is punishable by the sentencing range prescribed

5

in 21 U.S.C. § 841(b)(1)(A).  *Compare* 21 U.S.C. § 841(b)(1)(A)(vi), *with* 21 U.S.C. § 841(b)(1)(A)(viii).  The Third Superseding Indictment was therefore timely.

*Third*, a conspiracy conviction under 21 U.S.C. § 846 requires proof beyond a reasonable doubt of "an agreement to accomplish an illegal objective" and "the intent to commit the underlying offense."  *United States v. Mendoza*, 25 F.4th 730, 736 (9th Cir. 2022) (internal quotations omitted).  The intent element requires "the [g]overnment [to] prove at least the degree of criminal intent necessary for the substantive offense itself."  *United States v. Collazo*, 984 F.3d 1308, 1320 (9th Cir. 2021) (quoting *United States v. Feola*, 420 U.S. 671, 686 (1975)).  Evidentiary sufficiency is reviewed de novo.  *United States v. Bennett*, 621 F.3d 1132, 1135 (9th Cir. 2020).

Beal argues that the evidence supports the existence of two independent conspiracies—(1) a Hawaii- and California-based methamphetamine- and cocaine-trafficking conspiracy and (2) a separate fentanyl-trafficking conspiracy based in the continental United States—and that he had nothing to do with the former.  Although "[a]lmost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterized as an independent plan or goal," *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977), "the performance by a conspirator of separate and independent acts in furtherance of the conspiracy is not inconsistent with the existence of a single overall agreement," *United States v. Friedman*, 593 F.2d

109, 117 (9th Cir. 1979). A jury could conclude from the evidence that the Ohio operation was an extension of the same conspiracy that had theretofore operated in Hawaii and California.

"A single conspiracy may be identified by examining characteristics including the nature of the scheme, identity of the participants, nature and frequency of each conspirator's involvement, and commonality of time and goals." *United States v. Tille*, 729 F.2d 615, 621 (9th Cir. 1984). The operations in both places followed a common scheme under the same leadership during the same timeframe to fulfill a common objective. The same ringleader—Pongitini Fonua—coordinated the conspiracy's activities in both Hawaii and Ohio, and Fonua suggested that the Ohio shipment was a first step toward subsequent shipments. In both cases, drugs were shipped from the same place—California—to their final destinations, using the same method: couriers. Additionally, the Ohio fentanyl bust occurred close in time to a controlled methamphetamine buy in Hawaii from other members of Fonua's conspiracy. Finally, the activities in both Hawaii and Ohio furthered the same objective: to traffic illegal narcotics.

"[A]fter 'the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt even a slight connection of a defendant with the conspiracy is sufficient to convict the defendant of knowing participation.' Indeed, we have long held that conspiracies can be proven based on the reasonable inferences

7

drawn from circumstantial evidence." *United States. v. Jaimez*, 45 F.4th 1118, 1127 (9th Cir. 2022) (*quoting United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000)).

Sufficient evidence supports Beal's knowledge of the conspiracy and his intent to further its illegal objectives. He traveled to the hotel of Vaitaki Manoa, a co-conspirator tasked with bringing the drugs from California to Ohio, and received a black backpack from him. Later that evening, when Beal's taxi was stopped and searched, law enforcement officers found two sealed packages of narcotics inside the backpack, which was an amount consistent with information the FBI had obtained about the shipment plan. During the stop, Beal appeared nervous and lied about his ownership of the bag he had just been given.

Upon learning that Beal had been apprehended, Beal's co-conspirators worried that he would identify other members of the conspiracy. When Beal was later arrested after his indictment, he acknowledged guilt to arresting agents, asking them whether he could "just go in and tell them that I messed up and start my—doing my time right away without waiting for trial." Finally, Beal had a prior conviction for possession of more than 50 grams of cocaine with intent to distribute. Taken together, this evidence is sufficient to establish that Beal was aware of the conspiracy and acted with intent to further its objectives.

Beal also seeks protection under the "buyer–seller" exception, which "distinguish[es] between a mere drug buyer … and a participant in a drug-distribution conspiracy." *Mendoza*, 25 F.4th at 736. To support a conspiracy conviction, "there must be proof of some further agreement to commit a crime other than the sale itself, i.e., 'to further distribute the drug in question.'" *United States v. Ocampo-Estrada*, 873 F.3d 661, 665 (9th Cir. 2017). Beal's receipt of two kilograms of fentanyl, an amount entirely inconsistent with personal use, evinces that he was involved with a distribution conspiracy rather than an endpoint sale for "personal use." *Mendoza*, 25 F.4th at 736. Therefore, the exception does not apply. Sufficient evidence supports Beal's involvement in a single drug-trafficking conspiracy that transported multiple illegal narcotics and operated in California, Hawaii, and Ohio.

*Fourth*, venue is also reviewed de novo. *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011). Crimes like conspiracy "that are not unitary but instead span space and time … may be prosecuted in any district in which such offense was begun, continued, or completed." *United States v. Pace*, 314 F.3d 344, 350 (9th Cir. 2002) (quotations omitted). Beal's venue argument relies on the same "two-conspiracies" theory he makes regarding the sufficiency of the evidence. Because sufficient evidence supports the conclusion that Beal was part of a single conspiracy with operations in Hawaii, venue was proper in Hawaii.

9

*Fifth*, we review the refusal to give a specific unanimity instruction for abuse of discretion. *Ocampo-Estrada*, 873 F.3d at 665. Whenever "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice." *United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983). If, during a conspiracy prosecution, "the evidence in [a] case tend[s] to show multiple conspiracies instead of [a] single charged conspiracy," then "a 'genuine possibility of juror confusion' would seem to exist," and "the district court must give a specific unanimity instruction." *United States v. Lapier*, 796 F.3d 1090, 1097–98, 1100 (9th Cir. 2015). Like Beal's sufficiency and venue arguments, his argument regarding the requested specific unanimity instruction turns on his theory that there were two conspiracies, not one.[2] We reject it for the same reasons.

Beal's appeal raises no error requiring reversal. We conclude that (1) the seized narcotics were properly admitted; (2) the Third Superseding Indictment was timely filed, (3) sufficient evidence supported his conviction, (4) venue was proper

---

[2] At oral argument, Beal's counsel argued that the specific unanimity instruction might have been required not only because of his "two conspiracies" theory, but also because the jury may have been confused as to the types of drugs that were the subject of the charged conspiracy. It is unclear how such an argument does not also presuppose the existence of two conspiracies, but in any event, Beal did not brief any argument other than his "two conspiracies" theory, and we therefore do not consider it.

10

in Hawaii, and (5) the trial court did not abuse its discretion by refusing Beal's requested specific unanimity instruction.

**AFFIRMED.**

*United States v. Beal*, No. 22-10034

BERZON, Circuit Judge, dissenting:

I respectfully dissent from the decision to affirm Beal's conviction. Viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found beyond a reasonable doubt that Beal possessed the requisite knowledge of the charged conspiracy. *United States v. Phillips*, 929 F.3d 1120, 1123 (9th Cir. 2019).

The Third Superseding Indictment charged Beal with conspiracy to distribute methamphetamine, cocaine, and fentanyl "by at least sometime in 2009 and continuing to sometime in May 2019, within the District of Hawaii and elsewhere," in violation of 21 U.S.C. § 846.

To convict a defendant for conspiracy to distribute a controlled substance under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that "(1) there existed an agreement between two or more persons to possess with intent to distribute or to distribute [the controlled substance]; and (2) [the defendant] joined the agreement knowing of its purpose and intending to help accomplish that purpose." *United States v. Perez*, 962 F.3d 420, 444 (9th Cir. 2020).

I agree with the majority that there is sufficient evidence to conclude that the drug transactions in Hawaii, California, and Ohio constituted a single conspiracy.

1

The same individual, Pongitini Latu Fonua, Jr., coordinated the trafficking of drugs via couriers within the same time period. And there is evidence that the drug transaction in Ohio was an initial step by Fonua toward expanding the trafficking operation to the East Coast. Therefore, a rational juror could conclude that the Ohio transaction was part of a single overall conspiracy. *See United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir. 1980) (identifying "the nature of the scheme; the identity of the participants; the quality, frequency and duration of each conspirator's transactions; and the commonality of time and goals" as factors distinguishing a single conspiracy from multiple).

But the evidence is insufficient to establish that Beal was a knowing member of that conspiracy. "'Once the existence of the conspiracy is shown,' knowledge of its purpose can be established by proving beyond a reasonable doubt that there was a knowing, if 'slight,' connection between the defendant and the conspiracy." *United States v. Jaimez*, 45 F.4th 1118, 1123 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1038 (2023) (quoting *United States v. Collazo*, 984 F.3d 1308, 1319 (9th Cir. 2021) (en banc)). "[T]he government need not prove the defendant knew all the conspirators and details or participated in all the conspiracy's dealings," but "[a]t minimum, the government must prove the defendant (1) knew or had a reason to know of the scope of the conspiracy and . . . had reason to believe that [his] own benefits were dependent on the success of the entire venture; and (2) inten[ded] to

2

effectuate the object of the conspiracy." *Id.* (alterations in original) (internal quotation marks omitted).

Beal's nervous behavior on the night of the drug bust, his statement to law enforcement upon his arrest that he had "messed up," and his prior conviction for a drug crime are sufficient evidence for a rational juror to conclude that Beal knew he was involved in a drug exchange on December 10, 2014. But "when the government proves only that a defendant is involved in a single transaction that is but a part of a substantial ongoing conspiracy, and offers no other evidence as to the defendant's knowledge of the overall conspiracy, there is insufficient evidence to permit a factfinder to impute knowledge of the broad conspiracy." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1010 (9th Cir. 1995) (citing *United States v. Umagat*, 998 F.2d 770, 772–74 (9th Cir. 1993)).

The evidence introduced at trial establishes that, in 2014, the Maui FBI office was investigating an organization involving Fonua that was suspected of trafficking narcotics on Hawaii and the mainland. In November and December 2014, FBI agents learned of a plan coordinated by Fonua and an uncharged individual named "Chelz" to send drugs from California to Dayton, Ohio. Chelz informed Fonua that his associate "Oso," later identified as the defendant, would receive the drugs from Fonua's courier. On the day of the drug exchange, Chelz

3

communicated with Beal through another unidentified intermediary; the government did not introduce any recorded conversations directly involving Beal. There is no evidence of Beal's involvement in another drug transaction involving any of the same individuals before or after the Ohio transfer. Furthermore, an FBI Agent involved in the case stated in a wiretap affidavit, and reaffirmed at trial, that he did not believe that Beal knew or had access to Fonua or the other coconspirators or was aware of Chelz's identity.

The evidence, therefore, establishes only that Beal was involved in a single transaction, without any indication that he knew the scope of the broader conspiracy, including its geographical range and its several-year operation, or that he sought to benefit from that overall, extensive operation. Although the government is not required to show that Beal knew all of the conspirators or details of the conspiracy, the evidence here is insufficient to establish even a "slight" knowing connection with the overall scheme. *Jaimez*, 45 F.4th at 1123.

Accordingly, because the evidence is insufficient to establish a necessary element of the conspiracy charge, I would reverse Beal's conviction.