NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 27 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff - Appellee,<br><br>v.<br><br>SIVANNARAYANA BARAMA,<br><br>Defendant - Appellant. | No. 23-2087<br><br>D.C. No.<br>3:19-cr-00463-RS-2<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted December 2, 2024
San Francisco, California

Before: M. SMITH, MILLER, and BUMATAY, Circuit Judges.

Defendant Sivannarayana Barama appeals his convictions and sentence on

four counts of securities fraud in violation of 18 U.S.C. § 1348(2). We have

jurisdiction under 28 U.S.C. § 1291, and we affirm Barama's convictions.

However, we vacate his sentence and remand for resentencing.

Because the parties are familiar with the facts and background of this case,

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

we provide only information necessary to our ruling. In 2016, Barama reached out to Janardhan Nellore, his former coworker at Palo Alto Networks, Inc. (PANW), about trading PANW securities. Through his role at PANW, Nellore had access to confidential PANW revenue information. Nellore later testified that he provided trading advice to Barama based on this confidential information. Nellore messaged Barama details like "strong numbers expected," referring to PANW's non-public revenue information.

Although Nellore and Barama only ever discussed Barama's investing small amounts, such as a few thousand dollars, Barama invested significantly more, and his "huge trades" in PANW eventually alerted the FBI. Nellore later pleaded guilty to one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 1349. Barama proceeded to trial on one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 1349 and four counts of securities fraud and aiding and abetting in violation of 18 U.S.C. §§ 1348 and 2. A jury later acquitted Barama of the conspiracy charge but convicted him on the four counts of securities fraud under §1348(2). Barama timely appealed.

1. On appeal, Barama first argues that there was insufficient evidence to convict him under § 1348(2). While the jury had the option to convict Barama under either § 1348(1) or § 1348(2), it opted to convict him only under § 1348(2), which requires that money or property be obtained "by means of false or fraudulent

pretenses, representations, or promises." 18 U.S.C. § 1348(2). Barama argues that the government did not prove that money or property was obtained by false pretenses, false statements, or false promises.

"We review de novo whether sufficient evidence supports a conviction." *United States v. Liew*, 856 F.3d 585, 596 (9th Cir. 2017). There is sufficient evidence "if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Phillips*, 929 F.3d 1120, 1123 (9th Cir. 2019).

Here, the government provided evidence that Barama lied to Nellore about the size of his trades by understating his trading volume. For example, in a series of text messages sent in August 2016, which predated the trades at issue in the indictment, Nellore told Barama to buy "sept 16 dated calls only for 3 to 4k," and when Nellore asked Barama how many call options he had bought, Barama said five. Nellore understood Barama to be buying five call options for a total investment of $3,000 to $4,000. Instead, following his text to Nellore, Barama bought thirty call options set to expire on September 16 for a total cost of $24,300. Given Nellore's care to disguise his own fraudulent activity, a rational trier of fact could have found that Nellore provided Barama with PANW's confidential revenue information only because he believed Barama's lies about the size of his

trades.

Alternatively, Barama's convictions can be sustained under an aiding and abetting theory. The government provided evidence that Barama sought out Nellore for information on PANW securities and continued to seek out that information despite evidence suggesting he knew Nellore was violating PANW's confidentiality policies, thereby making a false promise. Therefore, a rational juror could have found that Barama "induced" or "procured" Nellore to commit fraud, as required for conviction under the standard aiding and abetting instructions provided to the jury.

2. Barama also argues that the district court plainly erred by constructively amending the indictment to allow for a conviction based on omitted facts. Although the indictment did not include an omissions theory, the jury instructions stated that, to find Barama guilty under § 1348(2), the government had to prove beyond a reasonable doubt that Barama obtained money or property "by means of materially false or fraudulent pretenses, representations, promises, or *omitted facts*."

The government and Barama dispute whether Barama merely forfeited this argument, meaning our court could review it for plain error, or waived it, meaning our court should deny review under the invited error doctrine. *See United States v. Baldwin*, 987 F.2d 1432, 1437 (9th Cir. 1993). Regardless, Barama has not

4

demonstrated that he deserves reversal even under plain error review. To establish plain error, Barama must show that "(1) there was an error, (2) the error is clear or obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020).

Barama argues that because there was evidence that he omitted facts as to his trading volume, a jury could have concluded that those omissions provided the basis for his securities fraud convictions. But the government never presented an omissions theory to the jury. To the extent that the government presented evidence about Barama's trading volume, it was in the context of Barama's affirmative lies about his trading volume. Therefore, the evidence at trial overwhelmingly supported conviction based on Barama's lies or Nellore's misrepresentations, not omitted facts. As such, Barama has failed to show that any error by the district court "affected his substantial rights or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Solakyan*, 119 F.4th 575, 594 (9th Cir. 2024).

3. Next, Barama argues that the district court plainly erred by (1) omitting the element of materiality and (2) failing to define the element of materiality in its jury instructions. Regarding the first argument, the jury instructions clearly included materiality and did not fail to state an element of the offense. Regarding

the second argument, Barama argues that the error prejudiced his substantial rights because materiality "has a specific legal meaning, one which is not obvious to laypersons." However, at no point did the jury express any confusion about materiality. Moreover, the government adequately presented evidence about the importance of the various false promises and statements; a jury could have easily inferred that Nellore would not have provided Barama with PANW's information if he did not believe that Barama was limiting his trading to small amounts. Additionally, under the aiding and abetting theory, a jury could have easily inferred that PANW would not have allowed Nellore to work with sensitive financial information if it did not believe that his promise to keep the information confidential was important. Therefore, no plain error occurred. *See United States v. Matsumaru*, 244 F.3d 1092, 1102–03 (9th Cir. 2001).

4. Barama next argues that the district court erred in refusing to provide a jury instruction stating that § 1348 required the government to prove that, as a non-insider tippee, Barama provided a personal benefit to his tipper. Before the district court, Barama argued that a personal benefit instruction should be included only so that the jury instructions matched the indictment. He did not make the same argument he now makes on appeal, which is that the "personal benefit" requirement that applies in Rule 10b-5 cases also applies in § 1348(2) cases. Because the "usual rule" is that arguments raised for the first time on appeal are

6                                                    24-6

forfeited, *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018), we review only for plain error, *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003).

"An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *Id.* Here, there is no controlling authority or non-conflicting analogous precedent on whether the government must prove that a tipper personally benefitted from his tip under § 1348. Our court has not definitively ruled on whether the personal benefit requirement in Rule 10b-5 cases applies to § 1348(2) cases. And no other circuit has ruled on this issue. Therefore, because there is no settled law on the personal benefit test as applied to § 1348, the district court did not plainly err in failing to include an instruction on this issue.

5. Finally, Barama argues that the district court procedurally erred in using his trading gains to approximate PANW's loss. Barama was sentenced after this court issued its decision in *United States v. Castillo*, 69 F.4th 648, 655 (9th Cir 2023), which held that *Kisor v. Wilkie*, 588 U.S. 558 (2019), applies to the Sentencing Guidelines. In *Kisor*, the Supreme Court held that the "possibility of deference" to an agency's interpretation of its own rules "can arise only if a regulation is genuinely ambiguous." *Id.* at 573. Therefore, under *Castillo*, if a section of the Guidelines is unambiguous, our court cannot rely on the commentary to provide meaning to that section. 69 F.4th at 655–56.

Barama was sentenced under U.S.S.G. § 2B1.1(b)(1), which increases the offense level based on the amount of loss caused by the offense. At the time Barama was sentenced, the commentary provided that a court could use "gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined."[1] U.S.S.G. § 2B1.1, cmt. n.3(B) (Nov. 2023). The district court found that PANW's loss could not reasonably be determined, so it used Barama's profits "to the tune of millions of dollars" to estimate loss.

Because "loss" as used in former U.S.S.G. § 2B1.1(b)(1) was not so ambiguous as to allow for a "gain" that does not approximate the victim's loss, the district court erred in using Barama's gain as a substitute for PANW's loss without making any findings on the victim's loss. This error was not harmless. If PANW's loss were zero, Barama's Guidelines range would be zero to six months, below the eighteen months he received. Therefore, we remand for resentencing, which may take place on an open record. Because *Castillo* did not address and foreclose the use of "gain" as a proxy for "loss," the government may have an opportunity to demonstrate on remand that Barama's profits constitute a reasonable approximation of PANW's loss.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[1] On November 1, 2024, amendments to the Guidelines became effective, moving this commentary on "gain" into the text of the Guidelines itself. *See* U.S.S.G. § 2B1.1(b)(1)(B) (Nov. 2024).